IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

BERNEST GULLEY                                                    PLAINTIFF


v.                          Case No. 10-1034


RETIREMENT PLAN OF
INTERNATIONAL PAPER COMPANY                                       DEFENDANT


### MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to the provisions of
the Employee Retirement Income Security Act of 1974, 29 U.S.C.
§§ 1001, *et seq.* ("ERISA"), alleging Defendant's decision to
deny his claim for early retirement benefits was unreasonable.
Before the Court are the Plaintiff's Complaint (Doc. 1),
Stipulated Administrative Record (Doc. 14), Defendant's
Memorandum Brief in Support of its Motion for Judgment on the
Administrative Record (Doc. 17)[1], Plaintiff's Motion for Summary
Judgment (Doc. 19) and Defendant's Brief in Response (Doc. 21).
For reasons reflected herein, Defendant's Motion for Judgment on

---

[1] Plaintiff did not file a response to Defendant's Motion for
Judgment on the Administrative Record. The Court will treat
Plaintiff's Motion for Summary Judgment as his response. "On or
about June 27, 2011, plaintiff's counsel informed counsel for
defendant that he intended to rely on the motion for summary
judgment and supporting material facts filed on April 5, 2011,
and found at Docket Entries 11 and 12." (Doc. 17, p.2).
Defendant did not file a Motion for Judgment, only a Memorandum
Brief in Support. (Doc. 17).

the Administrative Record (Doc. 17) is **GRANTED,** Plaintiff's Motion for Summary Judgment (Doc. 19) is **DENIED** and Plaintiff's Complaint (Doc. 1) is **DISMISSED WITH PREJUDICE.**

## I.   BACKGROUND

On August 13, 1979, Plaintiff Bernest Gulley ("Gulley") was hired by International Paper Company ("International Paper") to work as an hourly employee at its Mill in Camden, Arkansas. Gulley worked for International Paper until his termination on July 19, 1991.  (Admin. Rec. p. 1). At the time his employment ceased, Gulley had accrued twelve years of service under International Paper's Retirement Plan. (Doc. 1).

In 1999, Gulley made an inquiry to Direct Line Human Resources Service Center concerning his eligibility for disability retirement.  On April 2, 1999, he received a written response from Direct Line advising that he was not eligible to apply for disability benefits from the Retirement Plan of International Paper.  (Admin. Rec. p. 11).  The letter provided: "You are, however, eligible for a deferred vested benefit when you reach your Normal Retirement Age of 65.  You are also eligible to receive your benefit in a reduce[sic] amount commencing at any time after attainment of age 55.   No retirement benefits are payable to you prior to age 55." (Doc. 1 Ex. A).

On March 5, 2001, the Benefit Administration division of International Paper's Employee Service Center wrote to Gulley, informing him that as of his termination in 1991, his vested benefits would be paid at his normal retirement age of 65. (Admin. Rec. p. 13).

On November 25, 2003, Gulley received another letter from the Service Center in response to his request for early retirement.  The letter informed Gulley that at the time of his termination, in accordance with the plan document, an employee must have 15 years of vesting service to be eligible for early retirement.   Since Gulley only had twelve years of service, he was not eligible for early retirement. (Admin. Rec. p. 19).   On August 31, 2008, Gulley received an identical letter.   (Admin. Rec. p. 33).

On April 26, 2010, Gulley filed his Complaint alleging that he was entitled to retirement benefits from International Paper. (Doc. 1).   On July 26, 2010, Hon. Harry F. Barnes, United States District Judge, granted the parties' Joint Motion to Stay (Doc. 7) until Gulley exhausted his administrative remedies pursuant to the Retirement Plan of International Paper Company.   (Doc. 8).

On June 28, 2010, Gulley applied to the Retirement Plan for early retirement benefits.   In support of his application, Gulley provided a letter from his attorney, the April 2, 1999,

letter from Direct Line and one page from the Retirement Plan's 2003 Summary Plan Description[2].  (Doc. 1 Ex. B).   In response, International Paper forwarded to Gulley a copy of the Summary Plan Description in effect on the date that Gulley left his job at International Paper as well as a description of the claim procedure.

On October 25, 2010, the Retirement Plan denied Gulley's claim for early retirement benefits.  The Plan explained that "[u]nder the Plan provisions in effect at the time of [his] severance from employment with International Paper Company, a participant needed at least 15 years of vesting service in order to be eligible to retire and receive an early retirement benefit...."  The Retirement Plan further explained that, because Gulley had only twelve years of service, he was not eligible to receive early retirement benefits.  The Retirement Plan also confirmed that Gulley would be eligible to receive a vested retirement benefit of $220.33 per month when he reached

---

[2] Gulley refers to the document as "Defendant's Employee Handbook." (Doc. 20, p. 2). International Paper states that the document is  page 11 from its 2003 Summary Plan Description. The page reads, in relevant part, "The vested benefit payable at your normal retirement date is calculated under the applicable benefit formula based on your years of credited service in effect as of the date you terminate employment.  A reduced benefit is payable *as early as age 55 provided you have at least 10 years of vesting service*.  If you choose to start receiving your benefit before age 65, your benefit will be paid according to the following schedule with proportional credit given for partial years...." (Emphasis added).  (Doc. 1 Ex. B).

the age of 65.   In addition, the Retirement Plan informed Gulley

that any information he may have received in 1999 to the

contrary was erroneous and had been corrected by subsequent

correspondence in 2001, 2003 and 2008.  (Admin. Rec. p. 88).

On November 1, 2010, Gulley appealed the denial of his

claim for early retirement benefits.   In support of his

contention that he only needed ten years of service in order to

receive early retirement benefits, Gulley again submitted the

page from the 2003 SPD, describing it as the "Plan Booklet."

(Admin. Rec. p. 127).

By letter dated December 13, 2010, the Plan Administrator

denied Gulley's appeal, concluding that "Mr. Gulley is not

eligible to commence early retirement under the Plan based on

the provisions of the Plan in effect at the time of Mr. Gulley's

termination of employment" in 1991.   The Plan Administrator

informed Gulley that Section 1.29 of Article 1 of the Retirement

Plan of International Paper Company for union Represented

Employees (Group A) was the relevant provision in effect when he

left International Paper in 1991, and that, pursuant to that

provision, Gulley needed fifteen years of service to be eligible

for an early retirement benefit.   Because Gulley had only twelve

years of service when he left International Paper's employment,

he "did not have the required number of years of service when he

terminated employment with the company" to trigger an early

pension benefit. (Admin Rec. p. 446).  After his appeal was denied, the Stay was lifted on January 6, 2011, and Gulley resumed pursuit of his claim, asking this Court to find that he is entitled to retirements benefits as well as attorney's fees pursuant to 29 U.S.C. § 1132(g).  Retirement Plan of International Paper Company was substituted as defendant for International Paper Company. (Doc. 10).

## II. STANDARD OF REVIEW

Under ERISA, a denial of benefits by a Plan Administrator must be reviewed *de novo* unless the benefit plan gives the Administrator discretionary authority to determine eligibility for benefits or to construe the terms of the Plan, in which case the Administrator's decision is reviewed for an abuse of discretion. *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1160 (8th Cir. 1998) (*citing Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). Accordingly, the Court must be guided by the language of the Plan to determine the proper standard of review.

The Plan provides, in pertinent part, that the Plan Administrator has the power and authority to interpret the Plan, and to resolve ambiguities, inconsistencies and omissions, which findings shall be binding, final and conclusive. (Admin. Rec. p. 261).  It further provides that all questions arising out of or in connection with the administration of the provisions of the Plan shall be determined by the Plan Administrator, and any

determination so made shall be conclusive and binding upon on all persons having an interest in or under the Plan. (Admin. Rec. p. 262). In his brief, Gulley concedes that the Retirement Plan grants the Administrator discretion to decide questions concerning benefits claims and to construe provisions of the Plan. (Doc. 12). Gulley contends that the Court should closely scrutinize the entire record to determine if all aspects of ERISA law were followed and all of the evidence was considered by the Defendant. (Doc. 20). Gulley also argues that the Court should determine *de novo* what plan was in effect when he ceased employment in 1991, averring that such a determination is not a discretionary function of the Plan Administrator. The Court finds this argument unpersuasive. The Retirement Plan of International Paper Company gives the Administrator broad authority to construe the Plan and to determine a claimant's eligibility for benefits. Accordingly, we conclude that the Trustee's determination of the applicable Plan should be reviewed under the arbitrary-and-capricious standard. *Collins v. Central States, Southeast and Southwest Areas Health and Welfare Fund*, 18 F.3d 556, 559 (8th Cir. 1994)(Trustees' determination that an individual is ineligible to participate in the Fund because he does not meet the Plan's definition of employee should be reviewed under the arbitrary-and-capricious standard.)

Therefore, the plan administrator's decision may only be reviewed for an abuse of discretion.

The Eighth Circuit has "variously defined . . . an abuse of discretion as being 'extremely unreasonable,' 'virtually' the same as arbitrary and capricious, and 'extraordinarily imprudent.'" *Shell v. Amalgamated Cotton Garment*, 43 F.3d 364, 366 (8th Cir. 1994) (citations omitted). "The proper inquiry into the deferential standard is whether 'the plan administrator's decision was reasonable; i.e., supported by substantial evidence.'" *Cash v. Wal-Mart Group Health Plan,* 107 F.3d 637, 641 (8th Cir. 1997) *(quoting Donaho v. FMC Corp.*, 74 F.3d 894, 899 (8th Cir. 1996)). "While the word 'reasonable' possesses numerous connotations, this court has rejected any such definition that would 'permit a reviewing court to reject a discretionary trustee decision with which the court simply disagrees (.)'" *Id.* (citation omitted). A decision is reasonable if "a reasonable person could have reached a similar decision, given the evidence before him, not that a reasonable person would have reached that decision.  If the decision is supported by a reasonable explanation, it should not be disturbed, even though a different reasonable interpretation could have been made." *Id.* (citation omitted).

## III.   DISCUSSION

The Plan Administrator determined that the Retirement Plan in effect when Gulley was terminated from International Paper in 1991 was the plan approved by the Internal Revenue Service on November 4, 1985, and which included amendments effective June 1, 1979, June 1, 1982, June 1, 1983, January 1, 1984 and January 1, 1986. (Admin Rec. pp. 171 - 437). That plan, as described in the Summary Plan Description effective June 1, 1989, provided that for an employee to receive early retirement benefits at the age of 55 he or she must have accrued at least fifteen years of creditable service.   (Admin. Rec. p. 67).   Gulley does not explain where or how he received the page from the 2003 SPD, or why it should apply to him twelve years after his employment with International Paper ended.   The only argument that Gully has for maintaining that he could receive retirement benefits at age 55 is the letter from International Paper in 1999.   (Doc. 1 Ex. A).   This was eight years after he terminated employment with International Paper, so he could not have relied on that erroneous information at the time of his termination.   Further, on numerous occasions after that letter, International Paper advised Gulley that he had been given incorrect information and that, under the applicable Plan, he did not have the hours of creditable service required for early retirement.   (Admin. Rec.

pp 13, 19, 33).   We find the Plan Administrator's determination reasonable.

## IV. CONCLUSION

For the reasons stated above, the Court concludes Defendant's decision was not an abuse of discretion. Accordingly, Defendant's Motion for Judgment on the Administrative Record (Doc. 17) is hereby **GRANTED,** Plaintiff's Motion for Summary Judgment (Doc. 19) is **DENIED** and Plaintiff's Complaint (Doc. 1) is **DISMISSED** with prejudice. Each party is to pay their own costs and fees.

IT IS SO ORDERED this 10th day of May, 2012.

> */s/ Robert T. Dawson*
> Robert T. Dawson
> United States District Judge